**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Action No. 06-cv-02195-LTB-CBS

VACATION TRAVEL INTERNATIONAL, INC.,

Plaintiff,

v.

SUNCHASE BEACHFRONT CONDOMINIUM OWNERS ASSOCIATION, INC., a foreign corporation;
BEACHFRONT RENTALS, LLC, a foreign limited liability company,

Defendants.

_____

**Order**
_____

Defendants Sunchase Beachfront Condominium Owners Association, Inc., ("Association") and Beachfront Rentals, LLC ("Beachfront Rentals") move to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) a claim for breach of contract by plaintiff Vacation Travel International, Inc. ("VTI"). For the reasons discussed below defendants' motion is HELD IN ABEYANCE, in part and GRANTED, in part.

## I.  BACKGROUND

VTI is a Colorado corporation that arranges vacation travel for its customers. Its principal activity relevant to this case is arranging accommodations for students throughout the country during Spring break. The Association is the association of Owners of condominium units located at Sunchase Beachfront Condominiums in South Padre Island, Texas. Beachfront Rentals is a Texas Limited Liability Company formed in March of 2004 "to facilitate and organize the future

renting of condominiums at the Community" and "is a wholly-owned subsidiary of the Association."

The origin of this dispute lies in a business relationship established in 1994 between Jim Moldane ("Moldane"), President and Owner of VTI, and Cecil Gunn, who was at the time Manager of the Sunrise Beachfront Properties and the registered agent and Vice President of the Association. Gunn and VTI entered into a contract to rent out units at Sunrise Beachfront Properties each year for Spring break. Gunn would identify units available for rental, VTI would pay Gunn for these properties and rent them to Spring break vacationers. This arrangement continued without apparent incident from 1994 until 2003.

The details of this business relationship are described in, among other documents, two affidavits provided by Gunn, one on December 4, 2006 and one on December 19, 2006. These affidavits differ in several important respects, including on whose behalf Gunn negotiated and the extent of his business-related travel to Colorado. (I explore these differences in greater detail below.) Gunn left his position as Manager of the Owners Association in early 2004; it is unclear if this was voluntary (as stated in his second affidavit) or if Gunn was "relieved of his responsibilities" by the Association (as stated in his first affidavit.) Shortly thereafter, in February of 2004, the President of the Association communicated to VTI that it could not rent out any of the condominium units for the upcoming Spring break due to structural problems rendering the units unsafe. In March of 2004, Beachfront was incorporated as a "wholly owned subsidiary" of the Association, "to facilitate and organize the future renting of condominiums in the (Beachfront) community." VTI filed this suit in Colorado state court July 7, 2006; defendants then removed the case here. Defendants now move to dismiss for lack of personal jurisdiction under Fed. R. Civ. P.

12(b)(2).

## II. STANDARD OF REVIEW

In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). However, where, as in the present case, such a motion is decided on the basis of affidavits and without an evidentiary hearing, the burden on plaintiff is light. *Id.* "The plaintiff need only make a prima facie showing that jurisdiction exists." *Id.* For the purposes of this motion I presume all uncontroverted allegations in the complaint are true. *Id.* "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Kennedy v. Freeman,* 919 F.2d 126, 128 (10th Cir. 1990).  However, I accept as true only plaintiff's well-pled facts, not mere conclusory allegations. *Wenz,* 55 F.3d at 1505.

## III. DISCUSSION

In a diversity action, a federal court only has personal jurisdiction over a defendant if jurisdiction is consistent with the state's long arm statute and if jurisdiction does not offend the due process clause of the 14th amendment. *Benton v. Cameco Corp.,* 375 F.3d 1070, 1075 (10th Cir. 2004).  The Colorado long arm statute, Col. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent of the Constitution, so the jurisdictional analysis reduces to a single inquiry of whether jurisdiction offends due process. *Id.*

Personal jurisdiction comports with due process only where a defendant has minimum contacts with the forum state, and where those contacts are such that jurisdiction does not offend traditional notions of fair play and substantial justice. *OMI Holdings, Inc. v. Royal Ins. Co. of*

3

*Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998). Minimum contacts may be established either under the doctrines of "general" jurisdiction or "specific" jurisdiction. *Id.* The present case only involves specific jurisdiction.

In Colorado, establishing specific personal jurisdiction requires meeting a three-part test: "(1) the defendant must purposefully avail himself of the privilege of acting in Colorado or of causing important consequences in the state; (2) the cause of action must arise in the forum state from the consequences of defendant's activities; and (3) the activities must have a substantial enough connection with Colorado to make the exercise of jurisdiction over the defendant reasonable." *Encore Productions, Inc. v. Promise Keepers,* 53 F. Supp.2d 1101, 1116 (D. Colo. 1999). Jurisdiction is only appropriate "if the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *OMI Holdings,* 149 F.3d at 1091.

VTI's jurisdictional argument is narrow – that the existence of and the transactions surrounding the Association's putative contract with VTI is sufficient to confer jurisdiction over the Association in Colorado, and that this jurisdiction extends to Beachfront as the Association's alter ego. VTI does not assert that defendants had any other Colorado contacts.

Defendants do not appear to contest that a contract existed, or that VTI's cause of action arises from this contract. Rather, they argue that neither of the named defendants were parties to the contract, and even if the Association was a party to the contract this is insufficient to justify jurisdiction. Additionally, Beachfront is a separate entity from the Association that did not exist at the time of the putative contract formation, and the Association's contacts cannot be imputed to Beachfront under an alter ego theory.

A. <u>Owners Association</u>

The Association contends that Gunn's negotiations with VTI over the nine years of their relationship were not on behalf of the Association but on behalf of Sunchase Rental Agency ("SRA"), a sole proprietorship founded by Gunn "for the purpose of serving my fellow condo owners with the rental of their condos." Gunn's second affidavit states that SRA was not associated with the Owners Association, and that SRA entered into contracts with individual condominium owners to lease their units for Spring break rentals. Gunn states further that VTI was aware that Gunn was representing SRA and that his authority to rent condos stemmed from agreements with individual property owners. Gunn's second affidavit is supported, in part, by the affidavit of Shelby McNabb, an employee of the Association, who states on "information and belief" that Gunn formed Sunchase and negotiated with VTI on behalf of SRA. McNabb began working for the Association in February of 2004, one month after Gunn's employment there ended.

Gunn's first affidavit, however, tells a different story:

> "I acted as an agent of Defendant Sunchase Beachfront Condominiums Owner's Association, Inc. I was the manager of the condominium properties and coordinated the rental of the condominiums on behalf of Sunchase Beachfront Condominiums to third parties. In my capacity as manager, I was directly involved in the negotiations for the contracts for the rental of the Sunchase Beachfront Condominiums. I had personal contact with the principles and Board members of Sunchase Beachfront Condominiums Owner's Association, Inc."

(Gunn Aff. ¶ 2, December 4, 2006).

In this affidavit, Gunn states that Moldane entered into an agreement with "Sunchase Beachfront Condominiums," and that "I personally negotiated the terms of the contract on behalf

5

of Sunchase Beachfront Condominiums." Additionally, Gunn avers that the Association "knew about" these negotiations "on behalf of Sunchase Beachfront Condominiums." Gunn's later affidavit attempts to clarify that his reference to "Sunchase Beachfront Condominiums" refers to the "individual owners at the South Padre Island location that had given me permission to coordinate the rental of their condos" and not to the Association.

     As a general rule, in the face of conflicting affidavits in a motion to dismiss for lack of personal jurisdiction, I rely on the affidavits provided by the plaintiff over those provided by defendant. *Kennedy,* 919 F.2d at 128. The situation here is unusual, since the conflicting affidavits come from the same individual, only a few weeks apart. Nevertheless, I resolve any conflicts in favor of the plaintiff, and thus in favor of Gunn's earlier affidavit. The earlier affidavit states that there was a contract, that the contract was made by Gunn as a representative of "Sunchase Beachfront Condominiums" while he was at the same time an employee and agent of the Owner's Association. While Gunn's later affidavit states that Sunchase Beachfront Condominiums refers only to the individual owners, the affidavit is not clear on this point. For example, Gunn states that Sunchase Beachfront Condominiums, "through its newly appointed Association president, David Johnson, informed me that I would no longer be handling the rental of the Sunchase Beachfront Condominium units, and I was relieved of my responsibilities as Manager of the Sunchase Beachfront Condominiums." If Gunn's rental arrangements were not on behalf of the Association, it is unclear how the Association president could direct him to stop providing this service.

     Additionally, despite Gunn's statement that he entered into these contracts on behalf of his own sole proprietorship, the record shows that he corresponded with VTI on letterhead of

6

"Sunchase Beachfront Condominiums." The record shows invoices to VTI from "Sunchase Beachfront Condominiums." Gunn corresponded to VTI using the title Vice-President/General Manager, expressing "pleasure to enter our ninth year of association for the purpose of Spring Break accommodations." The record shows incorporation papers from the Texas Secretary of State of November 4, 1996 for the Owners Association listing Gunn as the Association's Vice President. The record contains a check from VTI payable to Sunchase Beachfront Condominiums for $25,170.06, dated March 12, 2003. While it is not clear if the entity "Sunchase Beachfront Condominiums" that received checks from VTI and that appears on Gunn's letterhead refers to the Association or to some other entity, it tends to support VTI's allegation that it was contracting with the Association, and certainly does not support Gunn's second affidavit statement that he was representing SRA. In fact, defendants have provided no evidence, aside from Gunn's second affidavit and McNabb's statements on information and belief about the role or existence of SRA.

It is premature at this stage of the case to make any factual findings. For the purposes of personal jurisdiction, I look only to whether the plaintiff has made allegations, supported by affidavits, showing jurisdiction. Gunn's earlier affidavit states that he made agreements with VTI on behalf of the Sunchase Beachfront Condominiums, which may or may not be the same entity as the Association. Since Gunn's two affidavits conflict, I resolve them in favor of VTI, and conclude that, for the purpose of this motion, Gunn was acting on behalf of the Association in his dealings with VTI.

Gunn's affidavits also conflict as to the nature of his travel to Colorado. His first affidavit states that he traveled to Colorado in the Winters of 1997 and 1998 "on behalf of Sunchase

7

Beachfront Condominiums" to discuss and confirm the continuation of the September 1994 contract and the rental price of the Sunchase Beachfront Condominiums." Gunn's second affidavit states, by contrast, that he traveled to Colorado on vacation, and that any discussions about the contract on these trips were incidental to the recreational purpose of the trip. Again, I resolve these conflicting affidavits in favor of VTI, and conclude for purposes of jurisdiction that Gunn traveled twice to Colorado to discuss the details of his contract with VTI.

    The jurisdictional question then reduces to whether the following contacts are sufficient to establish jurisdiction in Colorado: the negotiation, existence and transactions under the contract with a Colorado company; Gunn's two visits to Colorado as the Association's agent to negotiate the contract, and a series of faxes and phone calls to Colorado over nine years associated with negotiating and executing each successive contract. I believe they are.

    VTI's claim here arises directly from the putative contract with the Association. It is well established that "parties who reach out beyond one state and create continuing relationships and oibligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S. Ct. 2174, 85 L. Ed. 2d (1985). Here, the contract with VTI lasted, according to VTI and Gunn, from at least 1994 until 2003. While the overall lifetime value of this contract is not clear, plaintiff has submitted a check sent to Gunn in March of 2003 for $25,170.06 for the cost of renting condominiums for one week in one spring break season. This suggests that the total business conducted under this contract was likely hundreds of thousands of dollars.

    Moreover, VTI provided documents showing that the business relationship between VTI and Gunn included numerous fax, telephone and mail communications over the years. While faxes

and phone calls alone may not be sufficient to constitute the necessary contacts to justify jurisdiction, *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir. 1995), these kinds of communications as a component of a long-standing business relationship can be sufficient to support jurisdiction. *See Keefe v. Kirschenbaum & Kirschenbaum*, *P.C*., 40 P.3d 1267, 1272 (Colo. 2002). While defendants here argue that jurisdiction should not lie because it was Moldane who initially reached out to Gunn in Texas, rather than Gunn reaching out to Colorado, this consideration is largely irrelevant in light of the uncontroverted nine-year business relationship between VTI and Gunn. *See id.*   Indeed, the Supreme Court has concluded that jurisdiction is appropriate over out of state corporations with far fewer contacts than those present here, such as an out of state insurance company with only a single in-state policy holder, where that policy holder is suing the insurer in regard to that policy.  *see McGee v Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed.2d 223 (1957).

I conclude that the contacts alleged by VTI and supported by its affidavits and other evidence is sufficient to make out a prima facie case for personal jurisdiction. I note that I am not concluding as a matter of law that VTI had a contract with the Association. I conclude only that VTI has sufficiently plead the existence of a contract with the Association to meet its burden at this stage of the proceeding.

Even where I find that a defendant has minimum contacts sufficient to sustain specific jurisdiction, I also must inquire as to whether imposing jurisdiction would offend traditional notions of fair play and substantial justice. *OMI Holdings,* 149 F.3d at 1095.  However, defendants have not raised this issue, and I am prohibited from raising issues of personal jurisdiction sua sponte. *See Williams v. Life Sav. and Loan,* 802 F.2d 1200, 1203 (10th Cir. 1986).

Moreover, consideration of this issue here would offer plaintiff no opportunity to respond, which itself offends due process. *Divane v. Krull Elec. Co., Inc.,* 194 F.3d 845, 848 (7th Cir. 1999). I therefore will grant the parties additional time to brief this issue. Defendants shall submit a brief on this issue no later than March 27, 2007; plaintiffs shall respond no later than April 6, 2007.

B.    Beachfront

VTI contends that Beachfront is a wholly-owned subsidiary of the Association and so the contacts of the Association may be imputed to Beachfront for jurisdictional purposes. Defendants contend that Beachfront and the Association are separate entities, with separate accounting, separate purposes, separate books, separate financial accounts, file separate income tax returns and do not co-mingle funds. However, defendants do not appear to contest that Beachfront is a "wholly owned subsidiary" of the Association. (McNabb Decl. ¶ 2, Lopez Decl. ¶ 12).  VTI also alleges "upon information and belief" that Beachfront assumed the Association's contract obligations after February of 2004, but provides no evidence to support this statement, while defendants provide uncontroverted affidavits stating the opposite. Accordingly, the sole basis for asserting jurisdiction over Beachfront is via its status as a wholly owned subsidiary of the Association.

Even assuming Beachfront is a subsidiary of the Association, VTI's jurisdictional argument fails. While under some circumstances a subsidiary corporation's contacts may be imputed to a parent for the purposes of jurisdiction, the reverse is not true. The Tenth Circuit rejects the proposition that "because the court has jurisdiction over a parent corporation or dominating individual . . . it has jurisdiction over the alter ego corporation." *Home-Stake Production Co. v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1021 (10th Cir. 1990). "The dominated

corporation does not direct and control its dominating corporate or individual alter ego. Accordingly, it is unfair to impute to the dominated corporation the forum contacts of its alter ego." *Id.* The Association's contacts cannot, therefore, be imputed to Beachfront, and VTI has failed to make out a prima facie case of jurisdiction against Beachfront.

It is so ordered that,

1) Defendants' motion to dismiss for lack of personal jurisdiction (Docket # 5) is GRANTED as to defendant Beachfront Rentals, LLC, and is HELD IN ABEYANCE as to defendant Sunchase Beachfront Condominium Owners Association, Inc., and

2) Sunchase Beachfront Condominium Owners Association, Inc. shall submit a supplemental brief as described in this Order no later than March 27, 2007 and Vacation Travel International, Inc., shall respond no later than April 6, 2007.

**DONE and ORDERED,** this   8th   day of March 2007 at Denver, Colorado.

                                                    s/Lewis T. Babcock
                                                  United States District Chief Judge