IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 06-cv-02195-LTB

VACATION TRAVEL INTERNATIONAL, INC.,

  Plaintiff,

v.

SUNCHASE BEACHFRONT CONDOMINIUM OWNERS ASSOCIATION, INC., a foreign corporation,

  Defendant.
_____

**ORDER**
_____

This breach of contract case is before me on Defendant, Sunchase Beachfront Condominium Owners Association, Inc.'s (the "Association"), Motion for Summary Judgment [**Docket # 54**], Plaintiff, Vacation Travel International, Inc.'s ("VTI"), Response [**Docket # 64**], and Defendant's Reply [**Docket # 71**]. Oral arguments would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT the Association's Motion for Summary Judgment [**Docket # 54**].

**I. BACKGROUND**

The following facts do not appear to be disputed. At all times relevant to this matter, VTI was a travel agency that arranged spring break excursions for college students. Sunchase Beachfront Condominiums (the "complex") is a condominium complex on South Padre Island in Texas. The condominiums are each individually owned. The Association is the homeowners association for the individual owners of each unit in the complex.

In 1994, VTI entered into an agreement with Cecil Gunn—the manager of the complex and the vice president and registered agent of the Association—whereby Gunn would arrange for the rental of individual units to VTI for the use of VTI's spring break customers. Gunn—by means of his sole-proprietorship business, the Sunchase Rental Agency (the "agency")—would make arrangements with the individual condominium owners to make their units available to VTI, would collect payments from VTI, and would distribute the proceeds—less Gunn's costs and fees—to the individual unit owners. Gunn operated the agency from the property manager's office, and shared office-related expenses with the Association, but otherwise maintained separate records and accounts. Gunn maintained a tax identification number for the agency and reported his share of the agency proceeds as a scheduled item on his personal income tax statements.

In January 2004, Gunn faxed VTI a list of thirty-seven units that were available for spring break rental in 2004. Gunn was replaced as manager by David Johnson shortly thereafter. In February 20004, the Association determined that the complex needed significant renovations and that it would be necessary to vacate the complex during the renovations. Johnson notified VTI that the condos could not be rented while the renovations were ongoing—a time frame which included the spring break period in 2004. Johnson subsequently formed Beachfront Rentals, LLC—a wholly owned subsidiary of the Association—to facilitate and organize future rentals on behalf of Association members.

Plaintiff filed the present case on July 7, 2006, in Denver County District Court, alleging breach of contract against the Association and Beachfront Rentals. The case was subsequently removed to this Court on November 1, 2006 [**Docket # 1**]. I dismissed this case as to Beachfront

2

Rentals on March 8, 2007, for lack of personal jurisdiction [**Docket # 15**]. The Association now moves for summary judgment.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, *supra*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id*. Accordingly, in this breach of contract case, VTI must show material facts in dispute by a preponderance of the evidence in order to defeat the Association's motion for summary judgment. VTI meets this burden if it sets forth evidence that—if believed by the ultimate factfinder—makes it more likely than not the Association breached a contract with VTI.

### III. ANALYSIS

VTI alleges a contract with the Association that included a termination clause and a fee shifting provision. The alleged termination clause required the Association to give notice of its intent to withdraw from the contract within 30 days of the last booking. In this case, the alleged termination clause would have required the Association to give VTI notice of the Association's intent by May 2003—approximately nine months before such notice was actually provided. VTI also alleges the fee shifting provision entitled VTI to receive reasonable attorney fees and costs incurred in litigating its claims.

The Association argues summary judgment is appropriate because: (1) VTI will be unable to show that it entered into a contract with the Association; (2) VTI will be unable to show Gunn acted as the Association's agent when he entered into agreements with VTI to rent

4

the condos; and (3) VTI will be unable to show the existence of an enforceable termination clause or fee shifting provision. As I conclude VTI is unable to show a material question of fact exists whether the Association was party to the alleged contract or was otherwise obligated under the contract because of an agency relationship between Gunn and the Association, I do not address the third contention.

### A. Whether a contract existed between VTI and the Association

VTI alleges it entered into a contract with the Association in 1994 for the condo rentals. The Association claims it was never a party to the original contract because the contract—if one existed at all—was only between Great Destinations (the predecessor to VTI) and Gunn. The parties do not dispute that no copies of the contract exist.

The general rule under FED. R. EVID. 1002 and 1003 requires that a party seeking to prove the terms of a contract must provide the original contract or a mimeograph thereof. Where the original and all copies have been lost or destroyed, however, other evidence of the contract terms is admissible unless the party seeking to prove the terms of the contract lost or destroyed the original and copies in bad faith. *See* FED. R. EVID. 1004. Bad faith is not alleged here, so secondary evidence of the contract is admissible. *See Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 975 F.2d 1130, 1132 (5th Cir. 1992).

VTI points me to no evidence showing the Association was party to the alleged contract, but only points to evidence showing "Sunchase Beachfront Condominiums" was party to the contract. Both VTI and the Association provide evidence that the parties to the alleged contract knew "Sunchase Beachfront Condominiums" to be a separate entity from the Association. For example, James Moldane, the president and owner of VTI, testified in his deposition that the

original written agreement—which he himself drafted—was "with Great Destinations, which was a predecessor company to Vacation Travel, and Sunchase Beachfront Condominiums," but did not recall if the Association was a party to the agreement. [**Docket # 64-7**]. Likewise, the affidavits of Cecil Gunn distinguish "Sunchase Beachfront Condominiums" from the Association: "The Sunchase Beachfront Condominiums Owner's Association, Inc., and its principles and Board members knew about my negotiations on behalf of Sunchase Beachfront Condominiums with Vacation Travel International, Inc." [**Docket # 11-2**]; "Mr. Moldane was aware that I entered into the above-described rental arrangement on behalf of Sunchase Rental Agency and the individual owners at Sunchase Beachfront Condominiums that had given me permission to rent their condos. . . . To my knowledge, the Association has never entered into a contract with Vacation Travel." [**Docket # 17-3**]; "In my December 4, 2006 affidavit, I refer to 'Sunchase Beachfront Condominiums' and 'Sunchase Beachfront Condominiums Owners Association, Inc.' I intended 'Sunchase Beachfront Condominiums' to mean the individual owners at the South Padre Island location that had given me permission to coordinate the rental of their condos and not to refer to the Association." [**Docket # 17-3**].

It is the duty of the parties, not the Court, to provide and point to evidence in the record supporting their positions. *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513–14 (10th Cir. 1990). It is not this Court's task to comb through a non-moving party's submissions in an effort to link alleged facts to their arguments. *Barcikowski v. Sun Microsystems, Inc.*, 420 F. Supp. 2d 1163, 1169 (D. Colo. 2006). VTI directs me to no evidence—other than the bare assertions in the complaint and other papers—supporting its position that the Association was party to the alleged contract between VTI and Gunn. These bare allegations are insufficient to overcome a

6

motion for summary judgment. *See Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 800 (10th Cir. 1991) ("A nonmoving party cannot survive a motion for summary judgment based on bare allegations in the pleadings without supporting evidence."). Accordingly—in light of the absence of any evidence that the Association was a party to the alleged contract—summary judgment is appropriate on this issue. *See Bituminous Cas. Corp.*, *supra*, 975 F.2d at 1132 n.2 ("This Court agrees with the proposition that a lost document may be proved by secondary evidence; however, VTI [no relation] failed to present any evidence of the contents of the lost policies for the district court to consider. Proof of the existence of the policies does not obviate VTI of the burden to also prove their contents.").

### B. Whether Gunn was the agent of the Association

The parties do not dispute that Texas agency law applies in this case. Under Texas law, even if the Association was not party to the alleged contract between Gunn and VTI, the Association still may be bound by the terms of the contract if Gunn was acting as the Association's agent. As described by the Fifth Circuit, Texas law holds:

> Agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal, subject to the principal's control. As in the formation of any contract, the consent of both parties is necessary to establish an agency relationship. Agency is never to be presumed; it must be shown affirmatively. The party who asserts the existence of agency relationship has the burden of proving it. To prove an agency relation under Texas law, there must be evidence from which the court could conclude that the alleged principal had the right to control both the means and the details of the process by which the agent was to accomplish the task.

*Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1296 (5th Cir. 1994) (internal formatting and citations omitted). Even in the absence of an actual agency relationship, however, an alleged principal may be bound by the actions of the alleged agent if the principal knowingly permits the

agent to hold himself out as having authority—or if the principal fails to exercise ordinary care to prevent the agent from clothing himself with the indicia of authority—to act in the principal's behalf. *See Townsend v. Goodyear Tire & Rubber Co.*, 481 F. Supp. 2d 610, 619 (N.D. Tex. 2007) (citing *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984)).

As Texas law makes clear, if a principal exercises only the amount of control necessary to accomplish the results contemplated by the parties, but does not direct how the goal should be achieved, no agency relationship exists. *See Del Carmen Flores v. Summit Hotel Group*, 492 F. Supp. 2d 640, 644–45 (W.D. Tex. 2006) (discussing cases); *Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex. App. 2005) ("Where one has the right to control the end sought to be accomplished but not the means and details of the accomplishment; that is, only what shall be done, not how it shall be done, the person employed acts as an independent contractor and not as an agent.") (citations omitted). The principal must have control over the "*process* by which the alleged agent was to accomplish the task." *Karl Rove*, *supra*, 39 F.3d at 1296 (emphasis added); *see also Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 351 (5th Cir. 2001) ("The Facility's lack of control over how the servicing company accomplishes its designated tasks indicates that the servicing company is not an agent of the facility."). Moreover, the principal's control of the process must be more than occasional. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 589 (Tex. 1964).

The evidence presented here is insufficient to show a material question of fact exists whether the Association had the right to control both the means and the details Gunn employed to rent the condos to VTI. The evidence shows Gunn operated the rental program through his sole-proprietorship rental agency and made all arrangements with the individual condominium

8

owners themselves. The only evidence of "control" offered by VTI is the Association's ultimate decision to withdraw the units from rental availability during the repairs and the Association's approval of an increased per-unit occupancy maximum for the rentals. Both of these examples relate only to the end sought to be accomplished—namely, whether the units could be rented to VTI at all—and do not demonstrate sufficient control of the details of Gunn's rental business to show Gunn was the Association's agent. *See Coffey v. Ft. Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 680 (N.D. Tex. 1998) (holding a principal does not exercise control sufficient to create an agency relationship merely by limiting which products a particular contractor could install). Accordingly, VTI has not shown the existence of a material question of fact as to whether Gunn acted with the actual authority of the Association.

Neither has VTI raised a genuine factual question as to whether Gunn acted with the apparent authority of the Association. "While actual authority is created by written or spoken words or conduct by the principal to the agent, apparent authority is created by written or spoken words or conduct by the principal to a third party." *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 550 (Tex. App. 2003). VTI alleges that Gunn accepted as payment checks made out to "Sunchase Beachfront Condos" and that Gunn submitted invoices to VTI on Association letterhead. These allegations concern representations made by the alleged agent, not by the alleged principal. VTI provides no evidence suggesting the Association was aware Gunn appeared to be acting as their agent yet failed to exercise ordinary care to discourage that appearance. Moreover, even if Gunn's actions could be interpreted as suggesting an agency relationship with the Association, "it is settled law in Texas that mere declarations of an alleged agent, standing alone, are incompetent to establish either the existence of the alleged agency or

9

the scope of the alleged agent's authority." *Id*. Accordingly, VTI has not shown the existence of a genuine question of fact as to whether Gunn acted with the apparent authority of the Association.

## IV. CONCLUSION

Accordingly, the Association's Motion for Summary Judgment [**Docket # 54**] is GRANTED, and the above action is DISMISSED with costs awarded to Defendant.


Dated: June __17__, 2008.

                                                BY THE COURT:

                                                ___s/Lewis T. Babcock_____
                                                LEWIS T. BABCOCK, JUDGE